NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0479n.06

No. 19-6409

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>KARLA PARTON,</td><td>)</td><td rowspan="11">**FILED**<br>Aug 13, 2020<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>JOHNSON & JOHNSON and ETHICON, INC.,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendants-Appellees,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

Before: ROGERS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. Karla Parton appeals the district court's dismissal of her product-liability suit against Johnson & Johnson and Ethicon, which the court held was barred by Tennessee's statue of repose. We reverse.

In 2002, Parton developed an uncomfortable condition known as pelvic organ prolapse, which caused her uterus to push down into her vagina. By 2008, the prolapse had pushed Parton's cervix out of her vagina. She also developed urinary incontinence, generalized pelvic pain, and pain during sexual intercourse. To remedy these problems, Dr. Penny Knight implanted Parton with a Prolift brand vaginal mesh for her prolapse and with a second type of mesh for incontinence. To implant the Prolift, a surgeon would place a piece of polypropylene mesh (made by Johnson & Johnson's subsidiary Ethicon) against the vaginal wall, and anchor the mesh in the hip, pelvis, thigh, or groin. When the implant was functioning properly, the patient's tissue would grow around the mesh to support the collapsing organs.

But Parton's pelvic pain returned within a year of surgery. In 2009, she saw a pain specialist for her back, legs, neck, midsection, and vagina. In 2010, she again saw Dr. Knight for vaginal pain; and in 2014 she saw a different treater for problems with her bladder. On both occasions Parton had a pelvic exam, and both times the treaters found nothing wrong with Parton's mesh devices.

Parton's symptoms got worse in 2017: in addition to pelvic pain, she had severe pain during intercourse, vaginal odor, and intermittent bleeding. On one occasion, her partner "felt something sharp . . . during sexual intercourse"; and Parton herself told a nurse that she could "feel the mesh coming through." At an appointment in January 2018, Parton's gynecologist could see that part of her Prolift mesh had become exposed through her vaginal tissue. In April 2018, a surgeon partially removed the Prolift mesh, finding that it had "rolled and bunched on itself." The problems with the mesh, a doctor said, had caused Parton's pelvic pain, vaginal pain, and painful intercourse, all of which may be permanent.

Parton brought this suit against Johnson & Johnson and Ethicon ("the defendants") in September 2018, asserting negligence and product-liability claims under Tennessee law. The defendants thereafter moved for summary judgment under Tennessee's statute of repose, which (among other things) bars product-liability suits filed more than six years after the date of the "injury" giving rise to the suit. *See* Tenn. Code. Ann. §§ 29-28-102(6), 29-28-103(a). The district court granted summary judgment to the defendants, holding as a matter of law that Parton's injuries from the Prolift mesh arose more than six years before she filed suit. We review that decision de novo. *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 421 (6th Cir. 2019).

We begin with some points on which the parties agree. First, Parton's suit is barred only if her injuries from the Prolift mesh arose before September 2012. Second, the question whether

those injuries arose by that date is a question of fact like any other, and thus subject to Civil Rule 56. Third, the defendants bear the burden of proving the applicability of the affirmative defense at issue here, namely the bar of Tennessee's statute of repose. And fourth, for purposes of summary judgment, the defendants thus bore the burden of demonstrating—as a matter of law—that Parton's injuries from the Prolift mesh were present before September 2012.

The defendants, like the district court, think they met that burden because Parton herself testified that she had pelvic pain as early as 2009, which was about a year after the mesh was implanted. The defendants emphasize the following testimony in particular:

Q: Okay. Now, that generalized pelvic pain, when did that start?

A: That was—there was a little bit before the initial mesh surgery with Knight.

Q: All right. Fair enough.

A: Then it got worse.
…
Q: After the 2008 surgery, when did you start experiencing generalized pelvic pain?

A: Not long after I had the surgery.
…
Q: So it was within a year of Dr. Knight's 2008 surgery that you began experiencing pelvic pain?

A: Yes.

But that testimony establishes only that Parton had pain after the implant—not that her pain was caused by the mesh. Indeed, Parton had pain before the implant—that is why she had the surgery—and afterward. Hence this testimony, on its face at least, does not show that any injuries "caused by" the mesh's allegedly "defective or unreasonably dangerous condition" were present before 2012. *See* Tenn. Code. Ann. § 29-28-103(a). The defendants respond that the testimony quoted above was elicited in connection with interrogatory responses in which Parton said that the Prolift mesh caused her to experience pain; and thus, the defendants say, the "pain" that she

described in that testimony was pain that she attributed to the mesh. But that is only one possible reading of her testimony, and on summary judgment the district court was required to view the evidence in a light favorable to the nonmovant—namely Parton. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Moreover, Parton was competent to testify only about whether she experienced pain, not about whether it was caused by a medical device implanted a year before. Parton's testimony therefore does not remotely establish, as a matter of law, that her pain in 2009 was caused by the Prolift mesh. And since Parton's testimony was the sole basis on which the defendants sought and the district court granted summary judgment, that conclusion alone is reason enough for reversal here.

The district court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.